**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA
FEDERAL PUBLIC DEFENDER

CHRISTINA WONG
ASSISTANT FEDERAL PUBLIC DEFENDER

July 31, 2024

Magistrate Judge Adam B. Abelson
United States District Court – District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

> Re:   *United States v. Demetrious Rich, Jr.*
>       Case No. 1:23-CR-461-GLR

Dear Judge Abelson:

Demetrious Rich is not a danger to the community. But the Government has made him out to be one, based solely on proffers that aren't backed up by concrete evidence. The discovery turned over by the Government demonstrates the weakness of those uncorroborated proffers, and for this reason, the Court should release Demetrious. He requests release only on the strictest of conditions: 24/7 home confinement with a third-party custodian, location monitoring, no-contact orders, and restricted phone access, to either his mother Shannon Castro's home or his aunt Christina Joseph's home.

## I.     The Government has not met the legal burdens required of it.

### A.     *Demetrious is entitled to re-open his detention hearing.*

As a threshold matter, 18 U.S.C. § 3142(f) provides that a detention hearing may be reopened at any time before trial "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Here, since Demetrious' initial detention hearing, the Government has turned over voluminous discovery in his case. This information was not known to Demetrious at the time of the first hearing, and it has a material bearing on two factors relevant to this Court's detention analysis: the weight of the evidence, and the reliability of proffers made about uncharged acts. Accordingly, on the basis of new information received – and not received – in discovery, this Court should re-open Demetrious' detention hearing.

> **B.** *There is a presumption of release in Demetrious' case, and the Government cannot prove by clear and convincing evidence no conditions exist that would reasonably assure safety to the community.*

In federal criminal cases, "[L]iberty is the norm, and detention prior to the trial . . . is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). The Bail Reform Act was meant to authorize detention only for a narrow set of people: those who are *highly* dangerous or pose a *high* risk of absconding. *Salerno*, 481 U.S. at 747, 750 (emphasis added). Demetrious fits neither of these categories, and thus, under both the spirit of the Bail Reform Act and the letter of the law, this Court should release Demetrious to home confinement and location monitoring at his mother's home or his aunt's home.

Importantly, this is a case where there is no presumption of detention. Instead, the Bail Reform Act states that the Court "*shall* order the pretrial release of the person . . . unless the judicial officer determines that such release will not *reasonably assure* the appearance of the person as required or will endanger the safety of any other person or the community."[1] 18 U.S.C. § 3142(b) (emphasis added).

The Government, then, has the "heavy burden" to prove by clear and convincing evidence that *no* combination of conditions exists that would *reasonably* assure safety to the community. *See United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) (standard for danger to community is set by statute); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985) (Government faces the heavy burden of clear and convincing evidence to show the defendant is a danger). And the standard of "*reasonably* assure" does not require an "ironclad guarantee." *See United States v. Orta*, 760 F.2d 887 (9th Cir. 1985) ("*reasonably* assure" does not mean an ironclad guarantee).

In other words: if there are questions as to safety, then the Government must show that the federal courts and U.S. Probation, with all available supervision conditions and powers, can impose no conditions of release that will reasonably assure safety. *See* 18 U.S.C. § 3142(c). Here, there are certainly conditions that will reasonably assure Demetrious' appearance and safety – 24/7 home confinement under the supervision of a third-party custodian, location monitoring, and restricted access to electronic devices – and Demetrious should be released on those conditions.

**II.   The Court's prior decision to detain Demetrious was based on the Government's proffers, but those proffers were not reliable.**

While the Government is entitled to proceed by proffer, its proffers must be reliable. *See United States v. Hammond*, 44 F.Supp.2d 743, 746 (D. Md. 1999) (Government may proceed by proffer in a detention hearing, but when the evidenced proffered is uncorroborated, "the Court should consider the proffer with great care and accord it limited weight"). And when the Court evaluates those proffers, it can detain only based on "concrete evidence" of flight or danger, not merely the potential for either. *See United States v. Cruz*, 363 F.Supp.2d 40, 47 (D. P.R. 2005) (finding that the Government failed to present "concrete evidence to the effect that defendant was fleeing the jurisdiction, or was taking affirmative steps to do so," even though defendant had two

---

[1] 18 U.S.C. § 3142(b) (emphasis added).

passports, an extramarital affair, and a daughter in the Dominican Republic, and had hearsay evidence that, in 2002, defendant employed a hit man).

This Court's prior ruling was specific: the question it grappled over was danger, not flight, and thus the Government had to prove by clear and convincing evidence no conditions existed that would reasonably assure safety to the community.[2] The Court found that this was a "situation where the principal evidence the Government is relying on in support of its burden relates to allegations that haven't been charged as crimes," namely, a March 2023 homicide, a September 2022 nonfatal shooting, and a January 2022 nonfatal "hotel shooting." It considered "all of the evidence, which [was] in the form of a proffer," and determined that the seriousness of the charges in this case and the Government's proffers about the above-mentioned three events warranted detention.

However, those proffers were not reliable: Demetrious still has not been charged for any of these offenses; the discovery provided by the Government does not demonstrate Demetrious committed any of these offenses; and investigation done by the Federal Defenders' office has turned up no evidence that Demetrious committed any of these offenses.

### A.   *The Government's proffers about the weight of the evidence against Demetrious are not reliable.*

The Government maintains that Demetrious lived alone in the Whitby Road basement apartment where the two firearms were seized.[3] However, there is ample evidence turned over by the Government during discovery production that demonstrates the Government's proffer is not reliable.

Though his main residence was his grandmother's house, Demetrious admits that he occasionally stayed at the Whitby Road home where the two firearms were found. But he was not the only one who stayed there: many other people came and went from Whitby Road, and had access to both the basement and the upper floors. The basement apartment, notably, did not have a separate entrance: any person who went into the Whitby Road house could also access the basement, and vice-versa.

Accordingly, the below-described items that were discovered by investigators in the Whitby Road basement apartment indicate that multiple people either occupied or, at the least, had access to the basement where the guns were found:

### i.   *Seven identification cards belonging to a Charles Smith in the basement.*

One identification card – a Maryland state ID – belonging to Demetrious was found at Whitby Road. But *seven* identification cards belonging to a Charles Smith were found in a stack, on top of the internet router next to the computer in the basement:

---

[2] *See* Audio recording of February 9, 2024 detention hearing (available upon request). The information in this paragraph was derived from the audio recording.
[3] *See* Gov't Response at 4.





Charles Smith's cards included his social security card, three active debit cards, a 2022 "Law Enforcement Family Member" identification card, a Salisbury University undergraduate ID card, a First Aid/CPR/AED Course certification card, and – most notably – a concealed firearms permit card from the Utah Department of Public Safety, with an expiration date of April 2026.

      *ii.*    *Large-sized clothing items and shoes in the basement.*

There were also clothing and shoes in large sizes found in the basement apartment, items that just wouldn't fit Demetrious, who is 5'2" and 125 pounds:



   *iii.*  *Feminine possessions in the basement:*

  Additionally, there were women's items in the laundry area of the basement apartment, including a hairbrush and a pink-and-white striped women's tote bag filled with women's clothing:



     *iv.*  *A dog in the basement, with free run of the house:*

  And, to top it off, the officers who executed the search warrant found a dog in the basement apartment, looking right at home on one of the sofas there:



  The dog then followed the officers into the basement bathroom when they were taking photos of it:



  And the dog followed the officers upstairs to the first floor of the home:



Demetrious was a 19-year-old boy at the time of his arrest. He did not own a dog, nor could he conceivably have possessed the wherewithal to care for one. The dog's presence in the basement apartment shows that there were other occupants of the house – namely, the dog's owner, whoever that may be – and that the dog, just like any people who entered 5649 Whitby Road, had free reign of all three floors.

The discovery provided to Demetrious by the Government since his initial detention hearing reveals ample evidence that Demetrious was not the only occupant of the basement apartment and the Whitby Road home. In fact, evidence found in the basement – multiple current identification cards belonging to another person, clothing and shoes that do not fit Demetrious, women's items, and a dog that didn't belong to Demetrious – shows that other people were occupants of the basement apartment, and/or resided on other floors of the home, with free access to the basement.

### B.     *The Government's proffers about the "serious" nature of the alleged offense are misleading.*

The Government argues that "firearms offenses warrant particular scrutiny in the context of detention," and cites several District Court cases in support.[4] However, all four of the cases it cites involve defendants who were previously convicted of felonies and prohibited from possessing firearms – and three involve defendants who were previously convicted of felon-in-possession in particular.[5] Demetrious is a different type of defendant: he is *not* a felon, as he has no criminal history.

The Government also – both on February 9, and again now – focuses on what it describes as the "unusually dangerous nature"[6] of the firearms recovered at the Whitby Road residence. But even though the alleged firearms were a machinegun and a short-barreled rifle (the latter of which was not charged), Demetrious' charges don't involve mandatory minimums, or the presumption

---

[4] *See* Gov't Response at 4-5.
[5] *See id.* for case citations.
[6] *See* Gov't Response at 2; Gov't Detention Memo at 1.

of detention that is reserved for the most serious cases. And, in fact, Demetrious' firearms charges are actually *less* serious than the felon-in-possession firearms offenses this Court routinely sees and releases defendants on. Demetrious is charged with 18 U.S.C. § 922(o), unlawful possession of a machinegun, and 26 U.S.C. § 5861(d), possession of a firearm not registered in the NFRTR, which both have a statutory maximum of 10 years. 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871. This statutory maximum is *less* than the 15 years prescribed for felon in possession of a firearm, under 18 U.S.C. § 922(g). *See* 18 U.S.C. § 924(a)(8). And the Government is unable to pursue the more serious felon-in-possession charge against Demetrious because he is not a felon: he has no criminal history. The disparity in the statutory maximum for these charges demonstrates that Congress actually views non-felons who possess machineguns as *less dangerous* than felons who possess a standard firearm.

Nor does the presumption of detention reserved for the most serious federal cases apply here, further demonstrating that Demetrious' charges are not "unusually dangerous." *See* 18 U.S.C. 3142(e)(3)(A)-(E) (presuming that "no condition or combination of conditions will reasonably assure . . . the safety of the community" where defendants are charged with five explicitly-enumerated sets of crimes). Simply put, Congress has not included simple firearms possession offenses – even possession of a machinegun – with the group of crimes that warrant a presumption of detention, so the Government cannot say with a straight face that Demetrious is charged with a particularly serious offense.

A charge's "seriousness" also carries little weight in the analysis where the presumption of detention doesn't apply, as courts appreciate all "federal crimes are generally serious with serious penalties, and yet under the Bail Reform Act release is generally favored in federal criminal cases – as it should be, since locking up persons prior to conviction should be something of a last resort." *See U.S. v. White*, 2021 WL 2155441 (M.D. Tenn. May 27, 2021), at *13; see also United States v. Giordano, 370 F.Supp.2d 1256, 1264 (S.D. Fla. 2005) (not enough for Government to merely point to serious charges as motive to flee, as that is true in every federal case).

Moreover, the circumstances under which the firearms were recovered were objectively *not* "unusually dangerous" for several reasons. There were only two firearms found, no more. The firearms were not found on Demetrious' person – they were found under a couch, not even within arms' reach. And there are no allegations that Demetrious used the firearms as part of this offense. Put succinctly, this is a firearms possession case that doesn't involve violence.

In short: while Demetrious' charges are serious, they don't involve mandatory minimums or a presumption of detention, and he faces a lower statutory maximum than garden-variety felon-in-possession defendants do. And while the specific allegations are serious, they don't involve violence. This factor supports release.

    **C.**     ***The Government's proffers about other incidents Demetrious is allegedly connected to are stale and uncorroborated, nor do they point to evidence specifically demonstrating that Demetrious is a danger.***

When ordering Demetrious' detention in February, this Court relied on the Government's proffers about three uncharged incidents. However, the Government's proffers fail to meet the

"heavy burden" of "clear and convincing evidence that Demetrious is a danger to the community for several reasons. *See Motamedi*, 767 F.2d at 1406.

First, Demetrious has not been arrested or charged for any crime other than the instant offense. This means that despite the Government's best attempts to proffer evidence Demetrious was involved with three violent acts, the proffered evidence does not even meet the "probable cause" burden of proof. And "probable cause" is a less-demanding legal standard to meet than "clear and convincing," which is the burden of proof by which the Government must prove Demetrious' dangerousness. If the Government cannot demonstrate probable cause that Demetrious has committed a crime, then it certainly cannot meet the more-rigorous clear and convincing burden.

Second, evidence – or lack thereof – produced by the Government in the past few months bears out how unreliable the Government's prior proffers about five specific events are:

       i.       *January 2022 "hotel shooting:"*

At the February 9, 2024 detention hearing, the Government alleged that Demetrious "engaged in a shootout with suspected rivals in a downtown hotel . . . actually shooting weapons, discharging weapons, in a public place" in January 2022. These are severe allegations that this Court took seriously, clarifying, "Mr. Rich discharging weapons in the hotel?," to which the Government responded, "Yes, your Honor. Yes."[7]

However, the Government provided surveillance footage to Demetrious last week that clearly demonstrated its prior statement was untrue. In the surveillance footage, Demetrious and his friends are seen entering an elevator, when all of a sudden several people exiting the elevator begin shooting at them, completely unprovoked. Demetrious and his friends don't shoot back – they simply run for their lives – and the surveillance footage clearly shows Demetrious' empty hands, proving he wasn't armed. In fact, Demetrious runs away so quickly that he loses both his shoes in the process, more evidence that he was not expecting nor prepared for such an ambush. **Notably, the Government has conceded that Demetrious was not armed and did not shoot at anyone, contrary to their proffer on February 9.**

Thus, the Government's prior proffer has turned out to be a complete misstatement of the facts. **On this basis alone, the Court should not find any of the Government's other proffers reliable without some corroborating evidence to back them up.**

       ii.       *October 2022 carjacking and homicide:*

At the February 9, 2024 detention hearing, the Government described a carjacking and homicide that was allegedly connected – by bullet casings – to the below November 2022 shooting. But the Government has never alleged that Demetrious was present at the scene of this incident, nor have they produced a shred of evidence that ties him to it: they simply claim that he knows the defendant in this case, and use this claim to call Demetrious "dangerous" merely on the basis of his associations.

---

[7] *See* Audio recording of February 9, 2024 detention hearing.

Indeed, someone else was convicted for the carjacking and homicide. On April 8, 2024, Tayon Wallace was found guilty of first-degree murder, attempted armed carjacking, and four other counts. On July 8, 2024, he received a life sentence.[8] **Again, the Government has produced no evidence that ties Demetrious to this crime.**

      *iii.*    *November 2022 Nottingham shooting:*

Similar to the above allegations, at the February 9, 2024 detention hearing, the Government claimed that Demetrious was present at the scene of a November 2022 nonfatal shooting. However, the Government also conceded it couldn't say whether Demetrious was the shooter. An interrogation recording provided in discovery by the Government confirmed that Demetrious was present at the scene, but the Baltimore County detective questioning him conceded the same, that they don't think he was the shooter.

Indeed, Terrance Reaves was charged with attempted murder in connection with the Nottingham shooting.[9] He pled guilty to related charges and was recently released from incarceration after nearly two years. **Notably, the Government has produced no evidence that identifies Demetrious as the shooter.**

      *iv.*    *March 2023 homicide:*

At the February 9, 2024 detention hearing, and in its detention memo preceding the hearing, the Government argued The Government has produced a single piece of evidence to support its proffer that both guns found at Whitby Road were used in a March 2023 homicide, and that Demetrious is a suspect in that crime: a one-page NIBIN notification memo involving only the Glock handgun, not the second gun. The memo simply states that "a NIBIN investigative lead was developed through a correlation review of your evidence [a cartridge case] and <u>has not yet been confirmed</u> by microscopic comparison." Under the NIBIN analysis, an examiner reviews digital images of the ballistic evidence and compares them to each other, a form of "toolmark" identification.[10]

There are a few problems with NIBIN leads, and this one in particular. *First,* toolmark identification procedures have been found to be inherently unreliable, with the now-famous PCAST report concluding that firearm and toolmark identification "fall short of the criteria for

---

[8] *See* Baltimore County Circuit Court, Case No. C-03-CR-23-002173, available at https://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=C03CR23002173&loc=55&detailLoc=ODYCRIM.

[9] *See* Shayna Sefret, "16-year-old defendant rejects 25-year plea deal for attempted murder," *Baltimore Witness*, August 1, 2023, available at https://baltimorewitness.org/16-year-old-defendant-rejects-25-year-plea-for-attempted-murder/. Because Terrance is a juvenile, his specific case information is not publicly available.

[10] *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, "Fact Sheet – National Integrated Ballistic Information Network," March 2023, available at https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-integrated-ballistic-information-network.

foundational validity."[11] *Second*, this "unconfirmed, potential association"[12] is the only evidence that supports the Government's proffer. And notably, zero evidence – not even a NIBIN notification memo – has been produced that connects the second, uncharged firearm to the homicide, even though the Government proffered that gun was used in the same homicide.

Furthermore, even if this Court finds the NIBIN lead reliable, a mere NIBIN lead does not alone prove Demetrious is connected to the events of March 24, 2023. The gun was found at Whitby Road on May 30, 2023, more than two months after the homicide occurred. In Baltimore, guns change hands incredibly quickly – in fact, the text messages provided by the Government (discussed below) demonstrate just how easy it is to trade, buy, and sell a gun in this city. A Bureau of Justice Statistics survey of people convicted of firearms offenses and incarcerated in state prison backs this up: it determined that a whopping 79% of them bought their firearms from the street, illegal sources, or friends and family.[13] **The Government has produced no evidence that connects Demetrious in any way to the homicide other than the unreliable NIBIN memo.**

      *iv.  Sightings in carjacked vehicles:*

It has already been established that the Government misrepresented the evidence in the January 2022 "hotel shooting" during the February 9 detention hearing. On that day, in the same breath, the Government also proffered that it had surveillance footage of Demetrious in carjacked vehicles. However, the only surveillance footage provided to Demetrious does not show him in a carjacked vehicle.

The Government turned over surveillance footage of Demetrious exiting the back passenger seat of a black four-door sedan on December 13, 2022, claiming that vehicle was carjacked. However, the Government has not produced any police reports indicating that car was, in fact, a carjacked vehicle. Indeed, the only "evidence" that mentions Demetrious' connection to a carjacked vehicle (the Baltimore County search warrant, which hardly counts as airtight evidence) states the vehicle was an Acura MDX, which is an SUV – clearly a different car than the sedan seen in the video – and was recovered with paperwork belonging to another person in it on October 18, 2022, two months before this surveillance footage was recorded. Demetrious proffers to this Court that the December 2022 surveillance footage simply shows him as a passenger in a car that his friend lawfully purchased from a dealership for $12,000.

\*     \*     \*

Besides the aboved-mentioned unreliable, uncorroborated proffers, the Government has not produced any specific evidence showing that Demetrious is a danger and that no conditions exist to reasonably assure safety to the community. This Court historically has not considered

---

[11] *See* President's Council of Advisors on Science and Technology, "Report to the President, Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods," September 2016, at 11, available at https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_forensic_science_report_final.pdf.

[12] *See supra* FN 7.

[13] Harlow, Caroline Wolf, Ph.D., "Bureau of Justice Statistics Special Report: Firearm Use by Offenders," U.S. Department of Justice, Office of Justice Programs, Revised February 4, 2002, available at https://bjs.ojp.gov/content/pub/pdf/fuo.pdf.

dismissed, STETed, or nolle prosequi cases that appear on a defendant's pretrial services report as criminal history that counts against the defendant in its detention analysis. That is because this Court recognizes cases that don't end in convictions are unreliable assessments of a defendant's danger. Here, allegations that haven't even resulted in indictments are at issue. So we urge this Court to view the Government's uncharged, unproven allegations in the same light as dismissed, STETed, or nolle prosequi cases: mere hearsay that does not prove Demetrious' danger by clear and convincing evidence.

### D.   The Government's characterization of the selected messages and photos from Demetrious' phone manufactures crimes that didn't occur.

Teenagers live their lives on their phones, and Demetrious was no exception. The Government makes much of the fact that Demetrious was allegedly "negotiating the purchase of firearms" and "discussing the sale of firearms."[14] However, a closer look at the content of the text and Instagram messages provided reveals empty discussions that didn't actually lead to gun purchases.

Exhibit 1 contains a total of 28 text or Instagram message conversations. 11 of those threads are not about guns at all.[15] 14 of those threads – spanning a total of 3.5 months – do involve discussions about potentially buying or selling guns, but in 12 of those messages, it is abundantly clear that the transaction never occurred, either because someone stopped responding to questions or never agreed to necessities of the transaction such as price.[16] Most of the messages are exceptionally truncated with limited exchanges, demonstrating no serious intent to transact guns. And there are only two message threads in which Demetrious explicitly says he purchased items, but the items were magazines and lasers that are legal to buy.[17] Furthermore, the Government found only two guns at Whitby Road – neither of which are mentioned in the messages – and no others, evidence that Demetrious' conversations about guns did not result in him acquiring them.[18]

Exhibit 2 contains three undated photos, none of which were taken by Demetrious. The photo of Demetrious holding guns is a classic teenage puffery photo taken at earliest sometime in 2022, when he was 17 or 18 years old, before he had tattoos that covered his neck and hands, and is hardly evidence that he personally owned guns. The second photo of a gun was taken and sent to Demetrious by someone else; there is no proof this is his gun. And while the third photo may have been taken at the Whitby Road address, this doesn't suffice as proof he alone lived at Whitby Road.

Exhibit 3 contains five screenshots of magazines and lasers sold online (and one screenshot of a gun video on YouTube that has no bearing on whether Demetrious illegally possessed firearms), but importantly, *none of them are actually confirmed orders*. In fact, Demetrious simply

---

[14] *See* Gov't Response at 5.
[15] *See* Bates 3148, 3379, 3129, 3124, 3110, 3168, 3296, 3298, 3567, 3569, 4136.
[16] See Bates 3411, 5023, 9497, 3145, 3377, 3126, 3129, 3109, 3165, 3370, 3338, 3789.
[17] *See* Bates 9504, 9517.
[18] The Government also claims that Demetrious "confirms his address as 5649 Whitby Road" in one of the text messages. *See* Gov't Response at 5. Again, while Demetrious may have spent time at the Whitby Road address, so did others, and he would certainly never invite an acquaintance over to his grandmother's house, which was his actual residence.

sent two of the screenshots in his messages to another person during the course of a discussion about magazines and lasers.[19] Furthermore, it would not have been illegal for Demetrious to purchase those items.

This Court should remember that Demetrious was 19 years old at the time he sent these messages, and as 19-year-old often do, has exercised poor judgment on social media and over text with his peers. And unfortunately, social media in Baltimore is rife with images, videos, and discussions of guns being possessed, both legally and illegally. However, the Government has not provided concrete evidence that Demetrious possessed the discussed guns himself.

Finally, though the Government has clearly thoroughly searched Demetrious' phone, they have produced no messages connecting Demetrious to any of the above-mentioned specific five events, which further proves the unreliability of the Government's proffers.

### III.     This Court can impose strict conditions that will ensure community safety.

Demetrious now understands the seriousness of the allegations against him. All of the alleged activity the Government refers to happened over a year ago, before Demetrious was arrested. Now, under the close supervision of his family and equipped with productive activities available to him through U.S. Pretrial Services, Baltimore City Community College's online GED program, and social worker Claire Benack, Demetrious is unlikely to engage in the same type of behavior.

To mitigate any safety risk to the community, undersigned counsel suggests several conditions:

- Remain in the custody of a **third-party custodian**, either his mother or his aunt, who agrees to a) supervise Demetrious in accordance with all the conditions of release, b) use every effort to assure Demetrious' appearance at court dates, and c) notify the Court immediately if Demetrious violates any condition of release or disappears;
- Remain in **24-hour-a-day lockdown** at the approved residence at all times except for medical necessities, attorney visits, court appearances, or other specific activities that must be approved by the Court (**home confinement**);
- Request permission first from his Probation Officer if he needs to leave the home for medical necessities, attorney visits, court appearances, or other specific activities that must be approved by the Court;
- Submit to **location monitoring technology**: i.e., wear an ankle monitor that alerts the Probation Officer if he leaves his approved residence without prior permission, but only to engage in the above legally-necessary activities;
- **Avoid contact** with anyone who is or may become a victim or potential witness, including any person identified in writing by the Government; and
- **Restrict access to a personal cell phone and social media.**

---

[19] *See* Bates 9499, 9501.

  The Government claims Demetrious is a "digital native well-versed in the use of messaging and social media apps who possesses the ability to conduct criminal activity beyond the reach or observation of Pretrial Services and the Government with nothing but access to a cellphone and a wireless connection."[20] However, the question is not whether a defendant "possesses the ability to conduct criminal activity;" the standard is *whether no conditions exist that will reasonably assure community safety*. Here, the suggested conditions – the strictest possible under the Bail Reform Act, and the strictest undersigned counsel has ever crafted for this Court – reasonably assure Demetrious' release does not pose a danger.

  Demetrious will live either with his aunt Christina Joseph, who does not work and cares full-time for her autistic minor daughter, or his mother Shannon Castro, who works part-time and lives only with Demetrious' minor sibling. Both women are willing to be third-party custodians. And both women will ensure that he abides by the conditions this Court imposes, which include avoiding contact with anyone the Government identifies and restricting access to a personal cell phone and social media, to a degree that the Court feels comfortable with. These conditions, coupled with the requirement Demetrious submit to location monitoring and stay at home 24/7, will surely reasonably assure the safety of the community.

                    Sincerely,

                     /s/
                   Christina Wong (NY# 5528146)
                   Assistant Federal Public Defender
                   Office of the Federal Public Defender
                   100 S. Charles Street, Tower II, Floor 9
                   Baltimore, MD 21201
                   Telephone: 410-962-3962

Cc (via email): Keelan Diana, SAUSA
       Helen Domico, USPO

---

[20] Gov't Response at 6.