

**U.S. Department of Justice**
*United States Attorney*
*District of Maryland*

---

*Kim Y. Hagan*
*Assistant United States Attorney*
*Kim.Hagan@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4944*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

May 15, 2025

The Honorable George Levi Russell, III
Chief United States District Judge
Edward A. Garmatz U.S. District Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

     Re:    <u>United States v. Demetrious Rich, Jr.</u>
            Crim. No. GLR-23-461

Dear Judge Russell:

     The Government submits this letter memorandum in advance of sentencing in the above-captioned case, which is scheduled for Thursday, May 29, 2025, at 2:30 p.m. The Government respectfully recommends that the Court impose a sentence of 36 months of imprisonment on the Defendant, Demetrious Rich, Jr. (the "Defendant" or "Mr. Rich"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the terms of the plea agreement entered into by the Parties on March 18, 2025. ECF No. 68. The Government believes that a sentence of 36 months of imprisonment is sufficient but not greater than necessary to comply with the sentencing objectives set forth in 18 U.S.C. § 3553(a).[1]

## Background

     I.    <u>Factual Background</u>

     In late 2022, Baltimore County Police Department ("BCPD") began investigating a series of violent crimes that occurred in the fall and winter of 2022. As part of that investigation, BCPD executed a search and seizure warrant at the Defendant's residence on May 30, 2023. The Defendant was living alone[2] in a basement apartment located in a rowhouse at 5649 Whitby Road, Baltimore, Maryland 21206. Detectives had observed him coming and going from the front

---

[1] The Government reserves the right to supplement this memorandum with evidence and argument at the sentencing hearing.

[2] Detectives recovered a wallet containing identification and credit cards of Charles Jeffrey Smith. Mr. Smith was interviewed and stated that he lost his wallet in April of 2023, that he does not know the homeowner of the Whitby Road residence or the Defendant.

entrance of the house multiple times prior to their execution of the warrant.  Under a sofa in the basement bedroom, detectives found two loaded firearms that fall within the ambit of the National Firearms Act ("NFA"), 26 U.S.C. §§ 5801–5871.  The first was a Glock Auto Model 21 .45 caliber semiautomatic pistol bearing serial number FNE015 that was equipped with a machinegun conversion device, often called a "switch" or "button," which rendered it fully automatic (and thus, under federal law, a machinegun).  Below is the first firearm:



The second was an American Tactical Omni Hybrid Multi-Cal .556 caliber semiautomatic short-barreled rifle bearing serial number NS288677.  Below is the second firearm:



Both firearms were loaded with a round in the chamber, ready to be fired at any moment. Detectives also recovered approximately two-hundred and sixty (260) rounds of ammunition, two

firearm magazines loaded with ammunition, and the Defendant's Maryland driver's license and personal effects. The Glock 21 was reported stolen from Cumberland, Maryland on or about January 24, 2015. The Defendant was not authorized to possess either of these weapons.

Prior to BCPD entering his residence, the Defendant placed his cellphone inside a hole in the drywall next to his bed in an apparent effort to prevent law enforcement from finding it and searching it. Unable to locate the cellphone, detectives returned to the Defendant's residence later, after obtaining a separate search and seizure warrant, so they could recover it from inside the wall.

The Defendant was charged in Baltimore County with, *inter alia*, possession of two firearms. Mr. Rich was held without bond in state court following his arrest. On December 19, 2023, a federal grand jury returned a two-count Indictment charging the Defendant with violation of 18 U.S.C. § 922(o), unlawful possession of a machinegun, and 26 U.S.C. § 5861(d), possession of a weapon not registered to him in the NFRTR. ECF No. 1. The Defendant pled guilty to one count of violating 18 U.S.C. § 922(o) on March 18, 2025. ECF Nos. 67-68.

## Sentencing Guidelines

The Government agrees with the sentencing guidelines calculation laid out in the initial draft Presentence Investigation Report ("PSR").[3] Specifically, the base offense level is 18 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(5) because the offense involved a firearm described in 26 U.S.C. § 5845(a). A two-level enhancement applies pursuant to § 2K2.1(b)(4)(A) because the offense involved a stolen firearm. Accordingly, the adjusted offense level is 20. The final offense level is 17. The Defendant has a criminal history category of I. Therefore, the advisory guidelines range for the offense is 24 months to 30 months.

## Sentencing Procedure

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. 552 U.S. at 51–52. A sentencing court should begin by correctly calculating the applicable guidelines range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id*. at 49–50. After providing the parties with an opportunity to present argument, the court should consider the factors set forth in 18 U.S.C. § 3553(a), "mak[ing] an individualized assessment based on the facts presented." *Id*. at 50; *accord United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011). If the court "decides that an outside-[g]uidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*.

## Factors Set Forth in 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. The factors set forth in Section 3553(a) include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote

---

[3] The final PSR is due to be filed on or before May 23, 2025.

3

respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentencing disparity among defendants involved in similar conduct who have similar records.  18 U.S.C. § 3553(a).

      I.      <u>Nature and Circumstances of the Offense (18 U.S.C. § 3553)(a)(1))</u>

The Defendant pled guilty to possession of two exceptionally dangerous weapons: an unregistered, loaded machinegun, and an unregistered, loaded short-barreled rifle.  The NFA requires these types of weapons, which also include silencers, short-barreled shotguns, and destructive devices like bombs, grenades, and mines, to be registered in the National Firearms Registration and Transfer Record ("NFRTR").  Courts have found that these weapons are uniquely designed to cause significant harm and likely to be used for criminal purposes.  *United States v. Lane*, 689 F. Supp. 3d 232, 250 (E.D. Va. 2023) ("Dangerous and unusual weapons like machineguns do not fit within the plain meaning that the Supreme Court has ascribed to 'Arms' covered by the Second Amendment."); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) ("the [National Firearms Act]'s object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used.").  The fact that these firearms were loaded with a round in the chamber and that the Defendant possessed an additional 260 live rounds of ammunition is evidence of his intentions with these firearms – not to be displayed but to be used.

In its Motion for Review of Detention Order filed on September 9, 2024, the government attached several exhibits depicting content from the Defendant's cellphone.  The below photograph (ECF 38-2) depicts the Defendant posing with five different firearms.



We know from messages on the Defendant's cellphone (ECF 38-1) that he likes to buy, sell and trade firearms. And perhaps most disturbing, we know from a video previously submitted to the court (ECF 38-4) that the Defendant carries a firearm when on the streets of Baltimore, a firearm consistent with Glock Auto Model 21 seized in this case. In the video, the Defendant refers to it as "Glock 21 with a button." In the video, the Defendant is walking along what appears to be Pratt Street at night with three men, two of whom are masked and one of whom is carrying an AR-style firearm. Below are stills from the video:

 

The nature and circumstances of the Defendant's offense call for a sentence that reflects the seriousness of his conduct. Possession of illegal machineguns and short-barreled rifles is inherently dangerous, as these weapons are "likely to be used for criminal purposes." *Thompson/Ctr. Arms Co.*, 504 U.S. at 517. Baltimore City recorded 292 homicides caused by firearms in 2022 alone, out of 334 total homicides.[4] In 2023, 211 out of 262 total homicides were caused by firearms.[5] Although gun-related violence in Baltimore has decreased over the past two years, illegal firearms continue to endanger everyone in this District, and such crimes need to be penalized properly.

---

[4] Data taken from THE BALTIMORE SUN's *Baltimore Homicides* database, accessible at: https://homicides.news.baltimoresun.com/?range=2020&cause=shooting (last accessed May 1, 2025).
[5] *Id.*

II.   History and Characteristics of the Offender (18 U.S.C. § 3553(a)(1))

The Defendant was nineteen years old at the time of his arrest, could not legally own or possess firearms in the State of Maryland,[6] and had no firearms registered to him in the NFRTR. Unlike many federal defendants, the Defendant had virtually no contact with the criminal justice system prior to his involvement in this case. He does not have an extensive history of arrest and has no previous criminal convictions. There is evidence, however, showing that the Defendant is a member of a dangerous street gang, "EBM" or "East Baltimore Mafia". His social media handles on applications including Instagram and X include "Ebmmete,"[7] "MR.EBM," and "_mrebm_":





---

[6] *See* MD PUBLIC SAFETY § 5-133(d)(1).
[7] "Mete" being short for the Defendant's given first name, Demetrious.

Additionally, some of his social media posts discuss or reference EBM, and some of the messages between him and others reference the group as well:





7

    a. Threat Investigation

  On October 11, 2025, the government filed a letter to the court in opposition to the Defendant's release at a detention appeal hearing. ECF 46. In the letter, the government outlined facts of an investigation into a threat against a federal prosecutor by the Defendant, an investigation that was initiated as a result of a fellow inmate reporting it. The government continues to investigate this matter, having received additional information from another source as recently as earlier this month.

III. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Rule of Law, and to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2))</u>

  In crafting the Defendant's sentence, the Court should consider the seriousness of the Defendant's conduct and the need to promote respect for the rule of law. Illegal possession of unusually dangerous weapons involves a significant and ongoing threat to public health and safety. A sentence of 36 months would reflect the serious nature of his offense, promote respect for the rule of law, and afford adequate deterrence. The requested sentence would require an upward variance of six months above the advisory guidelines range. The Defendant's brazen conduct here coupled with evidence of firearms trafficking and gang affiliation justify an upward variance in the sentence.

## **Conclusion**

  For the reasons set forth above, the United States respectfully submits that a sentence of 36 months of imprisonment is appropriate in this case. We sincerely thank the Court for its consideration in this matter.

              Very truly yours,

              Kelly O. Hayes
              United States Attorney

              _____/s/_____
              Kim Y. Hagan
              Assistant United States Attorney

cc: Richard B. Bardos, Esq.